The claim that Mathieu is liable to Goldberg for damages resulting from neglect to comply with orders is unsustained by evidence.

The defense that Goldberg had a right to detain the goods until his advances were paid seems to me, under the circumstances, inapplicable. Goldberg had, of course, a right to reimbursement for his advances; but Mathieu, in his letter of September 6th, demanded an itemized statement of them, and offered to settle for them at once if it was furnished. Goldberg never gave any statement of his disbursements, except his claim for the lump sum of $1,583.60 in his letter of August 24, 1904. It was Goldberg's duty to furnish an itemized statement in response to Mathieu's demand, and he could not, while he neglected to furnish it, justify a detention of the goods on the ground that his advances must first be paid. Moreover, he did not, at the time, put his refusal to deliver the goods on that ground.

The claim that, because Goldberg's compensation was to be half the profits, he had an absolute right to detain the goods until he could sell them, seems to me untenable. On that theory he could detain them forever. Assuming that he was entitled to a reasonable time in which to sell them, he had had about a year; and his letters contain repeated assertions to the effect that they could not be sold at all in New York. But the general rule I understand to be that a principal, in the absence of an agreement, express or implied, to the contrary, has a right at any time to retake possession of unsold goods consigned to a factor, on payment of all advances and liens (19 Cyc. p. 117, and cases cited); and I do not think that the fact that Goldberg, under the arrangement, was to be paid for his services by a part of the profits, instead of by the usual percentage, makes the rule inapplicable.

Upon the whole case I am satisfied that all of Goldberg's grounds of refusal to deliver the goods unsold were sham excuses, fraudulently made to cover the deliberate and intentional detention of the goods without right. A careful reading of Goldberg's letters, the peculiar obscurity of which makes it difficult at first to understand them, creates an unfavorable impression. His repeated intimations that, if his demands were not acceded to, there was danger of a sale of the goods by the revenue authorities, are very suggestive.

I have signed the decree submitted by the complainant, with certain modifications.

---

In re WOLF.

(District Court, S. D. New York. June 28, 1907.)

No. 9,632.

BANKRUPTCY—DISCHARGE—DESTRUCTION OF BOOKS OF ACCOUNT.

Under Bankr. Act July 1, 1898, c. 541, § 14b (2), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1026], which makes it a ground for refusal of a discharge if the bankrupt has, "with intent to conceal his financial condition, destroyed, concealed or failed to keep books of account or records from which such condition might be ascertained," a bankrupt is not entitled to a discharge where he admittedly destroyed his

books of account with intent to conceal the record of his business, although he testifies that it was done to destroy evidence of his violation of a statute of the state and to defeat a criminal prosecution therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 739.]

In Bankruptcy. On application for discharge.

M. A. Lesser, for bankrupt.

L. M. Berkeley, for objecting creditor.

HOLT, District Judge. This is a motion to confirm a referee's report recommending a discharge. The discharge was objected to on the ground that the bankrupt had destroyed his books of account with intent to conceal his financial condition. The bankrupt admits that he destroyed his books of account, and testifies, in substance, that he did so because he had been engaged in the business of making loans upon usurious interest, that the district attorney had instituted criminal prosecutions under the usury laws against others in the same business, and that he had destroyed his books in order to prevent the district attorney obtaining through them evidence upon which to prosecute him, and not for the purpose of concealing his condition from his creditors. The referee has reported that his purpose was to thwart a prosecution for crime, and not to conceal his financial condition, and recommends his discharge.

The language of the act (Bankr. Act July 1, 1898, § 14b[2], as amended in 1903, 32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1907, p. 1026]) is that the court shall discharge the bankrupt unless he has, "with intent to conceal his financial condition, destroyed, concealed or failed to keep books of account or records from which such condition might be ascertained." Perhaps the first impression which the language "with intent to conceal his financial condition" gives is an intent to conceal such condition from his creditors, but the act does not say so. In this case the bankrupt admits that he destroyed his books with intent to conceal the records of his business, which, if exhibited, would show that he had been doing business in violation of a criminal statute; and I think that he therefore destroyed his books with intent to conceal his financial condition. It would be a dangerous precedent to establish in the bankrupt law that a man who willfully destroyed his books with the intent thereby to conceal evidence of a crime, and defeat a criminal prosecution, could thereby defeat objections to his discharge. Such an act is a willful destruction of the evidence which the bankrupt act contemplates should be preserved for the benefit of creditors. It is an act which, in fact, conceals his financial condition from his creditors. I think that such an act, if actually done with the intent of concealing a crime, and not of injuring the creditors, comes within the language of the act. If such a defense should be held good, it might be falsely set up.

In my opinion, upon the whole, the specification of objection to the discharge was proved, and the discharge should be refused.